UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:20-cv-24664-JEM/Becerra

JIMMIE EVANS,

    Plaintiff,

v.

DANIEL JUNIOR, CAPTAIN SAFANI
SUMMONS, SERGEANT SAMANTHA
WALDEN, SERGEANT CARVETTI
THOMPSON, MIAMI-DADE COUNTY,
and METRO WEST DETENTION CENTER,

    Defendants.
_____/

**REPORT AND RECOMMENDATION[1] ON
DEFENDANTS' MOTIONS TO DISMISS**

**THIS CAUSE** came before the Court upon Defendants Daniel Junior ("Junior"), Captain Safani Summons ("Summons"), Sergeant Samantha Walden ("Walden"), Sergeant Carvetti Thompson ("Thompson"), Miami-Dade County ("Miami Dade"), Metro West Detention Center's ("Metro West") (collectively "Defendants") Motion to Dismiss the Amended Complaint. ECF No. [26]. Plaintiff Jimmie Evans ("Plaintiff") filed Objections to Defendants' Motion to Dismiss, ECF No. [28], and a Response to Defendants' Motion to Dismiss, ECF No. [29]. Defendants filed a Reply. ECF No. [30]. Upon due consideration of the Motion, the pertinent portions of the record, and being otherwise fully

---

[1] This matter was referred to the undersigned by the Honorable Jose E. Martinez, United States District Judge. ECF No. [5].

advised in the premises, it is hereby **RECOMMENDED** that Defendants' Motion to Dismiss be **GRANTED,** and that the Amended Complaint, ECF No. [22], be **DISMISSED WITH PREJUDICE**.

### I. BACKGROUND

Plaintiff, an inmate at Metro West, filed a *pro se* Amended Complaint under 42 U.S.C. § 1983, alleging that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment and his Fourteenth Amendment due process rights. ECF No. [22]. Plaintiff's claim stems from Metro West's response to the COVID-19 pandemic and the medical care he received after he tested positive for the virus. *See id.* Specifically, Plaintiff states that he submitted various inmate grievances in April and May 2020 because Metro West staff members failed to: (1) provide proper cleaning supplies to enable inmates to clean their cells, showers, and recreation areas; (2) provide soap so that inmates could shower; (3) wear gloves when serving food; and (4) wear personal protective equipment. ECF No. [22] at 8, 30, 36. In response to Plaintiff's April grievance, Metro West responded to Plaintiff and advised him that he was confined to a single man cell with minimal exposure to other inmates, and that cleaning and sanitation supplies were available upon request. *Id.* at 8, 30. In response to the May grievances, Metro West assured Plaintiff that its staff members were working diligently to ensure the cleanliness of the facility, and that staff members were wearing personal protective equipment at all times. *Id.* at 36, 42. Plaintiff states that he appealed those responses because no steps were taken to address his concerns. *Id.* at 8, 31, 34. Plaintiff states that no actions were taken on his appeals and that the conditions at Metro West remained the same. *Id.* at 8.

In addition, Plaintiff states that on April 14, 2020, he reported that he felt ill, but the medical staff merely provided him with a cold pack and sent him back to his cell. *Id.* Thereafter, on April 18, 2020, Plaintiff states that he again reported that he felt sick, but the medical staff only provided him with medication, and sent him back to his cell. *Id.* Plaintiff states that on April 23, 2020, he asked the medical staff why he had not been administered a COVID-19 test given the fact that he felt ill and other inmates had tested positive for COVID-19. *Id.* Plaintiff states that the medical staff informed him that he had not been tested because he did not have a fever. *Id.* Plaintiff states that by April 27, 2020, he felt that he "was going to die inside [his] cell," and as such, contacted his family members in an effort to procure medical treatment. *Id.*

Ultimately, Plaintiff tested positive for COVID-19. *Id.* at 8, 48. As part of his COVID-19 treatment, Plaintiff complains that he was administered thirty medications, was injected with painful needles, and contracted blood clots for which he must take daily medications. *Id.* at 7–8.

Plaintiff now files the instant Amended Complaint, seeking: (1) a declaration that Defendants' acts and omissions constitute a violation of the United States Constitution; (2) an injunction ordering Defendants to eliminate all "unsafe or extremely harsh condition[s]"; (3) compensatory damages in the amount of $50,000 against each Defendant individually; and (4) punitive damages in the amount of $100,000 against each Defendant jointly and severally. *Id.* at 10.

## II.     THE INSTANT MOTION

Defendants filed the instant Motion to Dismiss, arguing that the Amended Complaint should be dismissed with prejudice. ECF No. [26]. Defendants contend that Plaintiff's claims are barred by the doctrine of qualified immunity. *Id.* at 4–6. Specifically, Defendants argue that none of the allegations regarding the conditions at Metro West amount to a Constitutional violation based on binding Eleventh Circuit precedent which established that the conditions at Metro West during the pandemic did not fall below Constitutionally acceptable levels. *Id.* at 6–8. As to Plaintiff's claim for inadequate medical care, Defendants argue that Plaintiff was adequately provided treatment and medication. *Id.* at 8–10. Moreover, Defendants argue that Plaintiff cannot establish supervisor liability because Plaintiff has not alleged sufficient facts to show that any of the Defendants personally participated in any of the alleged conduct. *Id.* at 10–12. Finally, Defendants argue that Plaintiff cannot state a claim for municipal liability because he has not demonstrated any policy or custom but has only described his individual experience. *Id.* at 12–14.

Plaintiff filed Objections and a Response to the Motion to Dismiss. ECF Nos. [28], [29].[2] Plaintiff re-states that the Metro West staff members did not take proper safety measures to prevent the spread of COVID-19. ECF No. [28] at 1–2. Plaintiff further states that Metro West did not have an adequate COVID-19 testing or treatment protocol. *Id.* at

---

[2] Plaintiff's Objections and Response are, in large part, a verbatim, handwritten copy of the Motion to Dismiss. These filings do not add *any* more support for Plaintiff's claims but, instead, are merely a repetition of the allegation that Metro West and its staff violated the Constitution because they failed to strictly comply with each of Plaintiff' demands.

2. As a result, when he tested positive for COVID-19, he "had to take about [thirty] different medications," was "injected with painful needles that left[] track marks on his arms," contracted "life threatening blood clots" for which he now has to take daily medications, and developed a kidney disease from the medications he has been administered. *Id.* at 3. Thus, Plaintiff states that his "conditions of confinement fell below constitutionally acceptable standards" and that Metro West "was deliberately indifferent to his serious medical need[s]." *Id.* Plaintiff submits that the doctrine of qualified immunity does not bar any of his claims because Defendants' actions constitute a violation of his clearly established Constitutional rights. ECF No. [29] at 4. As to Miami Dade, Plaintiff argues that it had a policy or custom of encouraging Metro West's illegal behavior or it failed to adequately address the actions of Metro West staff members. ECF No. [28] at 4. As to Defendant Summons, Plaintiff argues that she is liable because she participated in the violation of Plaintiff's Constitutional rights, failed to address any of the violations, and had a policy of allowing the illegal actions. *Id.* As to Defendants Thompson and Walden, Plaintiff argues that they participated in the violation of Plaintiff's Constitutional rights and failed to take any remedial action. *Id.*

In their Reply, Defendants repeat their argument that Plaintiff cannot overcome qualified immunity as to his Eighth Amendment cruel and unusual punishment claim based on binding Eleventh Circuit precedent, that he has failed to state a claim for deliberate indifference to medical needs, that he has failed to establish supervisor liability, and that his claims do not satisfy the requirements for municipal liability. ECF No. [30] at 1–4.

### III. ANALYSIS

Rule 8(a) of the Federal Rules of Civil Procedure only requires a short and plain statement of the claim and, as such, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A pleading is facially plausible when it states enough facts for the court to draw a "reasonable inference" that the defendant is liable for the alleged conduct. *Id.* The factual allegations must provide more than a "sheer possibility." *Id.* When reviewing a motion to dismiss, a court must view the complaint in the light most favorable to the plaintiff and accept the plaintiff's well-pleaded facts as true. *Hunt v. Aimco Properties, L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016). However, a court need not accept plaintiff's legal conclusions as true. *Sinaltrainal v. Coca–Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009); *Harper v. Lawrence County, Ala.*, 592 F.3d 1227, 1233 (11th Cir. 2010) (noting that the Eleventh Circuit Court of Appeals "has tightened the application of Rule 8 in section 1983 cases where qualified immunity is at issue," thereby imposing a heightened pleading standard).

### A. Defendants Junior, Summons, Walden, and Thompson Are Entitled To Qualified Immunity.

The Amended Complaint alleges that Defendants deprived Plaintiff of his federal Constitutional rights in violation of 42 U.S.C. § 1983. *See* ECF No. [22]. In the Response to the instant Motion, Plaintiff clarifies that he asserts two claims for violations of his Eighth and Fourteenth Amendment rights: (1) that his conditions of confinement fell below

Constitutionally acceptable levels based on Metro West's response to the pandemic; and (2) that Metro West's medical staff was deliberately indifferent to his medical needs. *See* ECF No. [29] at 1. Defendants Junior, Summons, Walden, and Thompson argue that to the extent Plaintiff seeks monetary damages, they are entitled to qualified immunity because the claims asserted stem from their exercise of discretionary authority in addressing Plaintiff's grievances. ECF No. [26] at 5.

Qualified immunity is an affirmative defense that "shields government officials performing discretionary acts 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Merricks v. Adkisson*, 785 F.3d 553, 558 (11th Cir. 2015) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). Thus, government officials are not held personally liable for objectively reasonable discretionary actions taken within their official capacity. *Id.* Discretionary acts within the scope of authority are those actions "undertaken pursuant to the performance of [the official's] duties and (2) within the scope of [her] authority." *Spechler v. Tobin*, 591 F. Supp. 2d 1350, 1356 (S.D. Fla. 2008), *aff'd*, 327 Fed. Appx. 870 (11th Cir. 2009) (first alteration supplied) (quoting *Collier v. Dickinson,* 477 F.3d 1306, 1307 n.1 (11th Cir. 2007). Once the government official establishes that she was acting within her discretionary authority, the burden shifts to the plaintiff "to prove that (1) the defendant violated a constitutional right that (2) was clearly established at the time of the alleged violation." *Mack v. Miles*, 795 Fed. Appx. 682, 683 (11th Cir. 2019) (citing *Whittier v. Kobayashi*, 581 F.3d 1304, 1308 (11th Cir. 2009)).

The Court finds that the individual Defendants have sufficiently established that they were acting within the scope of their discretionary authority when the alleged wrongdoing occurred. Plaintiff's claims against Defendants Junior, Summons, Walden, and Thompson all arise from their duties as correctional officers. Specifically, Plaintiff claims that, while employed at Metro West, Defendants Junior, Summons, Walden, and Thompson failed to properly address his COVID-19 concerns. Because Plaintiff's claims are related to what the individual Defendants did (or failed to do) within their roles as employees at Metro West, their actions were "within, or reasonably related to, the outer perimeter of [their] discretionary duties." *Mikko v. City of Atlanta, Georgia*, 857 F.3d 1136, 1144 (11th Cir. 2017) (alteration supplied) (quoting *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998)).

Having established that Defendants Junior, Summons, Walden, and Thompson were acting within their discretionary authority, the burden shifts to Plaintiff to show that there was a Constitutional violation of a clearly established right. *See Hannah v. Armor Corr. Health Servs. Inc.*, 792 Fed. Appx. 742, 744 (11th Cir. 2019). As set forth below, the Court finds that Plaintiff has not met, nor can he meet, this burden as to either of his claims given that the allegations contained in the Amended Complaint clearly do not rise to the level of a Constitutional claim.

### 1. Plaintiff Cannot Establish That The Conditions of Confinement At Metro West Fell Below Constitutionally Acceptable Levels.

The Eighth Amendment, which applies to the states by virtue of the Fourteenth Amendment, protects against cruel and unusual punishment and imposes a duty upon

prison officials to "provide humane conditions of confinement . . . ensure that inmates receive adequate food, clothing, shelter, and medical care, and [ ] 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–527 (1984)); *West v. Warden, Comm'r, Alabama Doc*, 869 F.3d 1289, 1292 n.5 (11th Cir. 2017) ("The Eighth Amendment applies to the states through the Fourteenth Amendment.") (citing *Rhodes v. Chapman*, 452 U.S. 337, 344–45 (1981)). Constitutional liability only arises if the plaintiff shows that:

> (1) a substantial risk of serious harm existed; (2) the defendants were deliberately indifferent to that risk, i.e., they both subjectively knew of the risk and also disregarded it by failing to respond in an objectively reasonable manner; and (3) there was a causal connection between the defendants' conduct and the Eighth Amendment violation.

*Bowen v. Warden Baldwin State Prison*, 826 F.3d 1312, 1320 (11th Cir. 2016) (*Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014)).

There is a two-pronged analysis that governs conditions of confinement claims. *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004). Under the first objective prong, "a prisoner must prove that the condition he complains of is sufficiently serious to violate the Eighth Amendment." *Id.* (citing *Hudson v. McMillian*, 503 U.S. 1, 8, (1992)). Under the second prong, "the prisoner must show that the defendant prison officials 'acted with a sufficiently culpable state of mind' with regard to the condition at issue." *Id.* (citing *Hudson*, 503 U.S. at 8). To that extent, the plaintiff must show that the officials were deliberately indifferent to the risks posed, namely that they acted with a reckless disregard to a substantial risk of serious harm. *Id.*; *Farmer*, 511 U.S. at 836 ("It is, indeed, fair to

9

say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk."). Deliberate indifference poses a high bar, as prison officials could "be found free from liability if they responded reasonably to the risk—and, importantly for present purposes, even if the harm ultimately was not averted." *Swain v. Junior*, 961 F.3d 1276, 1286 (11th Cir. 2020) (internal quotations omitted) (quoting *Farmer*, 511 U.S. at 844).

As to the first prong, Defendants do not dispute that COVID-19 poses a substantial risk of serious harm and that Defendants knew of that risk. *See* ECF No. [26] at 7 ("[T]he defendants do not dispute that they had subjective knowledge of the risk the virus poses . . . ."). Thus, the inquiry turns on whether Plaintiff has sufficiently established that Defendants were deliberately indifferent to the risks posed by COVID-19. Defendants submit that Plaintiff's claim is foreclosed by the Eleventh Circuit's holding in *Swain*. In *Swain*, several pre-trial detainees at Metro West, the same facility that is the subject of this suit, filed a Section 1983 action against Defendants Junior and Miami Dade in April 2020, three months before the instant action was filed. 961 F.3d at 1280. The plaintiffs in that case sought, like Plaintiff does here, a preliminary injunction based on the allegations that the conditions at Metro West violated the Eighth and Fourteenth Amendments because Metro West and its staff were deliberately indifferent to the risks posed by COVID-19. *Id.* at 1280–81. On appeal, the Eleventh Circuit concluded that the plaintiffs could not establish any Constitutional liability. *Id.* at 1289. The Court noted that based on two court-commissioned expert examinations of the facility in April 2020, the defendants did not exhibit subjective recklessness in response to COVID-19. *Id.*

10

Specifically, the Court explained that Metro West and its staff members had, in accordance with Center for Disease Control guidelines, taken numerous measures to address the risks posed by COVID-19, including encouraging social distancing by putting tape on the floor and staggering bunks, requiring staff and inmates to wear face masks, conducting screening for all those entering the facility, conducting daily temperature checks, suspending outside visitation, and providing disinfectant supplies to all inmates. *Id.* at 1288–89. Based upon an evaluation of the measures taken to curb the spread of COVID-19, the Eleventh Circuit determined that Metro West and its staff was not deliberately indifferent to inmates' COVID-19 concerns because the facility was doing its best when "faced with a perfect storm of a contagious virus and the space constraints inherent in a correctional facility. *Id.* at 1289.

Here, Plaintiff claims that in April 2020, he was subject to cruel and unusual punishment because Metro West staff members failed to provide personal sanitation supplies upon request and failed to wear personal protective equipment at all times. *See* ECF No. [22] at 7–8. However, this exact claim was rejected by the Eleventh Circuit in *Swain*. Specifically, upon an evaluation of the conditions at Metro West in April 2020, the Eleventh Circuit concluded that Metro West and its staff had not been deliberately indifferent to the risks posed by COVID-19. 961 F.3d at 1289. The Court concluded that the plaintiffs could not establish that Metro West and its staff acted with a reckless disregard to COVID-19 because they had, among other things, required staff and inmates to wear face masks and provided disinfectant supplies to all inmates. *Id.* Thus, the Eleventh Circuit determined that inmates at Metro West could not succeed on an Eighth

11

Amendment claim because Metro West and its staff had taken numerous measures to combat the spread of COVID-19. Because the Eleventh Circuit has determined the set of facts alleged here cannot establish that Metro West and its staff were deliberately indifferent to the risks posed by COVID-19, Plaintiff cannot show that there was a Constitutional violation of a clearly established right.

### 2. Plaintiff Has Failed To Show That Defendants Were Deliberately Indifferent To His Medical Needs.

The Eighth and Fourteenth Amendments bar prison officials "from being deliberately indifferent" to an inmate's medical needs. *Hannah*, 792 Fed. Appx. at 744 (citing *Jackson v. West*, 787 F.3d 1345, 1352 (11th Cir. 2015)). To establish a claim, the plaintiff must show that he had an "objectively serious medical need" and that the prison officials had a "subjective deliberate indifference to that need." *Id.* (citing *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004)). An objectively serious medical condition is one that has been diagnosed as such or "is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (quoting *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003)). Moreover, subjective deliberate indifference is established when the plaintiff shows: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence." *Id.* at 745 (quoting *Brown*, 387 F.3d at 1351). Thus, deliberate indifference occurs when a prison official unnecessarily delays in providing medical care for a known condition or provides cursory or no care at all. *Id.*; *Keohane v. Florida Dep't of Corr. Sec'y*, 952 F.3d 1257, 1266 (11th Cir. 2020) ("A prisoner bringing a deliberate-indifference claim has a steep hill to climb .

. . the Constitution doesn't require that the medical care provided to prisoners be perfect, the best obtainable, or even very good.") (quoting *Harris v. Thigpen*, 941 F.2d 1495, 1510 (11th Cir. 1991)).

In this case, the Amended Complaint alleges that Defendants did not immediately administer a COVID-19 test when Plaintiff first showed signs that he was sick but instead gave him a cold pack and medication, that Plaintiff was given "about [thirty] different medications" when he tested positive for COVID-19, that Plaintiff was injected with "big painful needles," and that Plaintiff contracted blood clots for which he now takes various medications. ECF No. [22] at 7. On these facts, Plaintiff cannot establish that any of the Defendants were deliberately indifferent to any of his medical needs. Instead, each time Plaintiff felt sick, he was seen by a medical staff member, who administered treatment based on Plaintiff's developing symptoms. In addition, Plaintiff was administered a COVID-19 test when the medical staff determined that he presented sufficient symptoms to warrant one. *See* ECF No. [22] at 39 ("Your medical needs were taken care of at [Metro West] and as soon as you showed signs of COVID-19, you were tested and housed appropriately."). Once Plaintiff tested positive for COVID-19, he was transferred to a different facility where additional medical treatment was provided. *Id.* at 7–8. Moreover, to the extent Plaintiff developed blood clots as a result of contracting COVID-19, Plaintiff is currently receiving treatment for his blood clots. *See id.*

Plaintiff's dissatisfaction with the method of care he received is insufficient to establish a Constitutional violation. *See Hoffer v. Sec'y, Florida Dep't of Corr.*, 973 F.3d 1263, 1272 (11th Cir. 2020) (noting that "[w]here a prisoner has received some medical

13

attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law") (quoting *Harris v. Thigpen*, 941 F.2d 1495, 1507 (11th Cir. 1991)). Although Plaintiff may have desired a different course of treatment, the care provided passes Constitutional muster because "diagnosing, monitoring, and managing conditions— even where a complete cure may be available—will often meet the 'minimally adequate medical care' standard that the Eighth Amendment imposes." *Id.* at 1273 (quoting *Harris*, 941 F.2d at 1504). As such, Plaintiff has failed to show that any of the Defendants were deliberately indifferent to any of his medical needs, particularly where Defendants Junior, Summons, Walden, and Thompson were correctional officers who had no role in determining Plaintiff's medical treatment. In sum, Plaintiff cannot show that there was any Constitutional violation of any clearly established right. Thus, Defendants Junior, Summons, Walden, and Thompson are entitled to qualified immunity against Plaintiff's claim for money damages.

### 3. Defendants Junior, Summons, Walden, and Thompson Are Not Subject To Supervisor Liability.

The Amended Complaint asserts that Defendants Junior, Summons, Walden, and Thompson are liable as supervisors because they directly participated in the violation of Plaintiff's rights and "failed to do anything to fix the situation." ECF No. [22] at 7. Defendants argue that Plaintiff has failed to allege sufficient facts to establish supervisory liability. ECF No. [26] at 10–11.

Vicarious liability does not apply to Section 1983 claims, instead the plaintiff must specifically allege that the defendant's actions violate the Constitution. *Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). Thus, supervisor liability under Section 1983 is only established if the supervisor participated in the alleged constitutional violation or if there is a "causal connection" between the actions of the supervisor and the alleged violation. *Braddy v. Florida Dept. of Lab. & Emp. Sec.*, 133 F.3d 797, 801 (11th Cir. 1998) (quoting *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990)). In order to establish a causal connection, the plaintiff must show "a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation." *Brown*, 906 F.2d at 671.

In this case, the Amended Complaint purports to establish supervisor liability based on the allegation that Defendants Walden and Thompson responded to Plaintiff's inmate grievances. ECF No. [22] at 7. This allegation, alone, does not establish any liability because merely providing a written or verbal response to an inmate grievance is not a violation of any Constitutional right. The Amended Complaint further states that Defendants Junior, Summons, Walden, and Thompson are subject to supervisor liability because they "created a policy or custom [of] allowing or encouraging the illegal action" or failed to adequately train their subordinates." *Id.* These bare-bones, conclusory allegations do not establish that Defendants Junior, Summons, Walden, or Thompson personally participated in any Constitutional violation or had *any* connection to *any* policy

15

of encouraging *any* Constitutional violation. Because the Amended Complaint contains only conclusory allegations that Defendants Junior, Summons, Walden, and Thompson violated Plaintiff's Constitutional rights pursuant to certain unidentified policies or customs, Plaintiff has failed to state a claim for supervisor liability. Accordingly, Defendants Junior, Summons, Walden, and Thompson are entitled to qualified immunity as to these claims.

### B. The Amended Complaint Fails To Establish Municipal Liability.

Claims against government officials in their official capacities are in fact claims against the entity by which the officials are employed. *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) ("Because suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official-capacity actions against local government officials, because local government units can be sued directly . . . .") (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1986)). Thus, where a complaint asserts both an official capacity claim against a government official and the public entity, the claim against the official is redundant and should be dismissed. *Id.*

A Section 1983 claim cannot be sustained against a local government entity "unless the harm was caused in the implementation of 'official municipal policy.'" *Lozman v. City of Riviera Beach, Fla.*, 138 S. Ct. 1945, 1951 (2018) (quoting *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 691 (1978)). Thus, the complaint must identify: "(1) an officially promulgated county policy *or* (2) an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the county." *Grech v.*

16

*Clayton County, Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003) (emphasis added). In either case, the complaint must also show that the governmental entity "has authority and responsibility over the governmental function in issue" and that "those officials who speak with final policymaking authority for that local governmental entity concerning the act alleged to have caused the particular constitutional violation." *Id.* (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)).

Here, the Amended Complaint only states that Defendants "created a policy or custom allowing or encouraging the illegal action" and failed to adequately train employees on the risks posed by COVID-19. ECF No. [22] at 7. Again, Plaintiff's bare-bones, conclusory allegations are insufficient to establish any liability. Specifically, the Amended Complaint does not allege any facts to support a finding that Miami Dade or the Public Health Trust caused any constitutional violation by any custom or practice through the repeated acts of any policymaker. Instead, Plaintiff's allegations seem to be premised on the fact that his inmate grievances were either addressed or denied because the correctional officers determined that the grievances had no merit. *See, e.g.*, ECF No. [22] at 36 ("Thank you for bringing this issue to my attention. After investigating your concern referencing cleanliness due to COVID-19. All staff are working diligently to continue sanitize the facility on continuous basis."). Indeed, a municipal claim based on an isolated incident unique to Plaintiff "is not sufficient to satisfy the 'custom or policy' prong necessary to impose § 1983 liability." *Diaz v. Miami-Dade County*, 849 Fed. Appx. 787, 792 (11th Cir. 2021). As such, Plaintiff's claims against Miami Dade and the Public Health Trust fail.

### C. Further Amendments Would Be Futile.

In order to state a § 1983 claim, a plaintiff must show: "(1) a deprivation of a federal right and (2) that the deprivation was committed under the color of state law." *Stevens v. Plumbers & Pipefitters Local 219*, 812 Fed. Appx. 815, 819 (11th Cir. 2020) (citing *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999)).

As previously set forth, Plaintiff has failed to establish that any of his federal Constitutional rights were violated. Specifically, Plaintiff cannot establish that that the conditions of confinement at Metro West ran afoul of the Eighth Amendment because Plaintiff's exact claim has been evaluated and rejected by the Eleventh Circuit. Additional amendments would be futile because the Eleventh Circuit has determined that Metro West took sufficient measures in April 2020 to address the risks posed by COVID-19 and that a Section 1983 claim could not be sustained on this basis. In addition, Plaintiff cannot show that Metro West and its staff was deliberately indifferent to his medical needs in violation of the Constitution. Plaintiff's desire for a different method of treatment cannot form the basis for a Constitutional violation because he cannot establish any indifference to his medical needs. As such, additional amendments would be futile, and the Amended Complaint should be dismissed with prejudice.

### IV. CONCLUSION

Based on the foregoing, it is hereby **RECOMMENDED** that the Amended Complaint, ECF No. [22], be **DISMISSED WITH PREJUDICE**.

## V. OBJECTIONS

A party shall serve and file written objections, if any, to this Report and Recommendation with the District Court within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Any request for an extension of this deadline must be made within seven (7) calendar days from the date of this Report and Recommendation. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this Recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, on January 21, 2022.

_____
**JACQUELINE BECERRA**
**UNITED STATES MAGISTRATE JUDGE**